337 F.2d 393
 Irene Lorraine RUTHIG, Administratrix of the Estate of Harold Dearson Ruthig and Gerald Alvin Ruthig, Plaintiff-Appellant,
v.
SAGINAW TRANSFER CO., Inc., Defendant-Apppellee.
CANADIAN FREIGHTWAYS, LTD., Plaintiff-Appellant,
v.
SAGINAW TRANSFER CO., Inc., Defendant-Appellee.
 No. 14637.
 No. 14638.
 United States Court of Appeals Seventh Circuit.
 October 21, 1964.
 
 William S. Spangler, Richard A. Mayer, Gary, Ind., William L. Arnold, Chicago, Ill., for plaintiffs-appellants, Spangler, Jennings, Spangler & Dougherty, Gary, Ind., Morris, Liss, Arnold & Hennessy, Chicago, Ill., of counsel.
 Daniel F. Kelly, Allen W. Teagle, Hammond, Ind., Joseph V. Dowd, Chicago, Ill., for defendant-appellee, Tinkham, Beckman, Kelly & Singleton, Hammond, Ind., Dowd, Dowd & Dowd, Chicago, Ill., of counsel.
 Before KNOCH, CASTLE and KILEY, Circuit Judges.
 CASTLE, Circuit Judge.
 
 
 1
 These diversity actions were instituted by the respective plaintiffs-appellants in the District Court for recovery of damages from the common defendant-appellee, Saginaw Transfer Co., Inc. The complaint of the plaintiff administratrix charges the defendant with negligent and careless misconduct in the operation of a tractor-trailer motor vehicle unit owned by it, which misconduct is alleged to have occasioned the death of Harold Dearson Ruthig, the driver of a tractor-trailer unit being operated for the plaintiff motor carrier, Canadian Freightways, Ltd., and the death of Gerald Alvin Ruthig, his helper. Canadian Freightways in its independent action sought to recover from the defendant for damages to the tractor-trailer and its cargo. The two actions were consolidated.
 
 
 2
 The jury returned verdicts for the plaintiffs awarding the plaintiff administratrix $90,000 as administratrix of Harold Dearson Ruthig's estate, and $60,000 as administratrix of Gerald Alvin Ruthig's estate. Canadian Freightways was awarded $16,072.46. The court granted the defendant's motion for judgments notwithstanding the verdicts, vacated and set aside the judgments entered on the verdicts, and granted defendant's motion for a new trial in event the judgments entered for the defendant are vacated or reversed. The plaintiffs appealed.
 
 
 3
 From our review of the record in the light of the controlling legal principles applicable we are of the opinion the District Court did not err in entering judgments for the defendant notwithstanding the verdicts. We therefore affirm the judgment order of the District Court in each of the consolidated cases.
 
 
 4
 The deaths and property damage for which recovery is sought resulted from a collision of Canadian Freightways' tractor-trailer with that of the defendant. The collision occurred on a four-lane highway viaduct or overpass — near the east end of the viaduct. The roadway was icy and banked snow occupied about one foot of the outer edge of the outside lanes. Each lane was ten feet wide. The driver-occupants of both vehicles were killed and the only occurrence witnesses were three occupants of an automobile which had been passed by defendant's vehicle immediately prior to the impact, and a police officer who arrived at the scene subsequent to the collision and who testified as to the position of the vehicles, the location of the debris, and identified photographs of the site.
 
 
 5
 The Canadian Freightways' tractor-trailer was traveling east. The automobile and defendant's vehicle were proceeding west. The debris from the collision was in the west-bound lanes of traffic.
 
 
 6
 Considering the evidence, together with all reasonable inferences which might be drawn therefrom, in the light most favorable to the plaintiffs, there was evidence from which the jury could have found that as defendant's vehicle passed the automobile, which also was traveling west-bound, on the approach to the viaduct or overpass, and was cutting back over in front of the witnesses' automobile, part of defendant's vehicle was two or three feet over the center line of the undivided four-lane highway and it was traveling at an excessive rate of speed — 50 to 55 miles per hour. While defendant's vehicle was cutting in and had practically cleared the automobile but had not completely returned to the outer west-bound lane the impact with the east-bound Canadian Freightways' vehicle occurred.
 
 
 7
 There was testimony that vehicles approaching the viaduct could not see a vehicle coming from the opposite direction until a point at or near the top of the viaduct was reached. The viaduct itself was level but the approaches upgrade.
 
 
 8
 The Canadian Freightways' vehicle was on the wrong side of the four-lane highway when the collision occurred — and apart from any question as to the point where the defendant's vehicle could have first been seen by the Canadian Freightways' vehicle there is nothing but pure conjecture or speculation upon which to rest a conclusion that the presence of the vehicle in the wrong or opposing lane of traffic was due to emergency action taken in an unsuccessful attempt to avoid a collision or that the presence of the vehicle in the opposing lane of traffic was due to any conduct on the part of the defendant.
 
 
 9
 Cases such as Lee v. Terminal Transport Company, 7 Cir., 269 F.2d 97, heavily relied upon by plaintiffs, are not apposite on the facts and circumstances disclosed by this record considered in the light most favorable to plaintiffs. In Lee a two-lane, 22½ feet wide, highway was involved and the approaching vehicles were in sight of each other as each came down hills forming both approaches to a narrow bridge.
 
 
 10
 That defendant's conduct was a proximate cause of the collision must rest upon something more than sheer speculation or conjecture. Any inference of evasive emergency action must be a reasonable one. Whether plaintiffs' vehicle ever observed defendant's vehicle while the latter was over the center line is, on the record before us, wholly speculative. Moreover, in view of the undisputed unobstructed 17 feet remaining in the east-bound lanes we do not believe it reasonable to infer that the presence of Canadian Freightways' vehicle in the opposing lane of traffic was due to an attempt to avoid a collision — emergency action resulting from a situation into which the defendant had thrust the driver of the Canadian Freightways vehicle.
 
 
 11
 In view of the conclusion we have reached on the granting of the motion for judgments notwithstanding the verdicts it is not necessary to consider the court's action in granting the alternative motion for a new trial.
 
 
 12
 Affirmed.
 
 
 13
 KILEY, Circuit Judge (dissenting).
 
 
 14
 I respectfully dissent.
 
 
 15
 The essential issue here is whether there is any evidence that Saginaw's negligence was the proximate cause of the collision. With due respect to the district court's courage in the difficult ruling, my view is that the court erred by considering evidence and drawing inferences favorable to Saginaw and by passing on questions of credibility, contrary to the rule stated in Mescall v. W. T. Grant Co., 133 F.2d 209, 210 (7th Cir. 1943), as a basis for his opinion that plaintiffs had not established a prima facie case.
 
 
 16
 I think the evidence favorable to plaintiffs, taken as true, with reasonable inferences drawn against defendant, tends to prove that the negligence of Saginaw was the proximate cause of the collision. There was evidence that Saginaw, at fifty-five miles per hour, tried to pass the Lewis westbound passenger car by swinging out in a "wide curve" on the snow-glazed surface of the incline to the bridge; that in doing so it passed the Lewis car with three feet of the truck in the inner eastbound lane; that while passing, it knew or should have known of the approach of the Canadian truck eastbound in the inner lane; that in passing the Lewis car as it did, it created an emergency for the Canadian truck coming suddenly upon the Saginaw truck east of the crest of the hill; and that in the emergency the Canadian truck, to avoid a collision, turned into the inner west-bound lane as the Saginaw truck did likewise just before the impact.
 
 
 17
 The case is close. In my opinion, under the Indiana rule stated in Mescall, there is, at least, a doubt about whether the evidence tends to prove the essential element in question, and I think the doubt should be resolved in favor of submission to the jury.