Mrs. Marie **BROWN**, Plaintiff-Appellee,

v.

**FORD MOTOR COMPANY**, Defendant-Appellant.

No. 72–3100.

United States Court of Appeals, Fifth Circuit.

June 1, 1973.

Rehearing and Rehearing En Banc Denied Aug. 6, 1973.

Edmund A. Landau, Jr., James V. Davis, Albany, Ga., for defendant-appellant.

Edward T. Hughes, Robert E. Hughes, Camilla, Ga., Sol Altman, Larkin M. Fowler, Jr., Thomasville, Ga., for plaintiff-appellee.

Before WISDOM, GEWIN and CLARK, Circuit Judges.

CLARK, Circuit Judge:

[1] Mrs. Marie Brown brought this diversity action seeking damages for the death of her husband, who died as a result of an automobile crash. Plaintiff contended that the accident was caused by the negligence of Ford Motor Company in assembling the automobile's steering mechanism. The jury rendered a verdict in favor of Mrs. Brown against Ford Motor Company. After carefully reviewing the record in this case, we conclude that the verdict was unsupported by the evidence and reverse.

According to the uncontradicted evidence, the 1967 Ford Mustang automobile driven by Mr. Brown had been purchased used and had been wrecked and repaired before he acquired it. He was killed when the car left the highway and, despite the fact that it traversed both banks of a sloping ditch, traveled 280 feet in a straight line before running head-on into a large oak tree. The highway patrolman who investigated the accident testified that there were no signs of brake or skid marks between the point where the automobile left the pavement and the point of impact. Plaintiff's case rested on evidence tending to show that the nut affixing the steering wheel to the steering wheel shaft was loose. According to testimony presented on behalf of the plaintiff, such a condition would have allowed the splines on the steering wheel to become worn. The worn splines, it is asserted, would have permitted the steering wheel to rotate freely on the shaft, depriving the driver of effective control over the vehicle's direction of travel.[1]

Ford contends on appeal that the jury verdict was contrary to the mechanics of physical science in light of the uncontradicted testimony introduced on its behalf that without steering control an automobile could not have angled across the ditch at the side of the road while traveling a straight path.[2] However, our disposition of the question discussed below renders it unnecessary to resolve this point.

Even assuming that there was sufficient evidence from which the jury could have reasonably concluded that the accident was proximately caused by the alleged defect, the plaintiff fell short of presenting sufficient evidence from which it could be concluded that the defect was the result of Ford's negligence. Mr. Walter Jurvis, sales manager of the parts supply company which manufactured the steering wheel for Ford, testified that a special marking on the wheel taken from the Brown car identified it as being one of a special order of steering wheels which was not delivered to Ford until some ten months after the latest possible date of manufacture of the car. This testimony was uncontradicted and unimpeached.

■■ This circuit is firmly committed to the general rule that ordinarily questions of credibility of witnesses are

---

1. The defect here alleged is the same as that alleged by the plaintiff in Nevels v. Ford Motor Co., 439 F.2d 251 (5th Cir. 1971), in which we held that sufficient evidence had been adduced to present a jury question as to Ford's negligence. Some time after the accident in suit here, one Mr. Nevels, apparently a relative of the plaintiff in the former case, purchased the steering wheel assembly of Mr. Brown's wrecked Mustang from a salvage operator, examined it in his workshop, then contacted Mrs. Brown to inform her of his findings. The attorneys for the plaintiff are those that represented the plaintiff in Nevels, while Ford is represented by the same attorneys who represented it in the Nevels action.

2. In Nevels the automobile followed an erratic path.

for the jury [3] and our opinion today signals no departure from this standard. Rather, we emphasize the caveat expressed by the Supreme Court in Chesapeake & O. Ry. Company v. Martin, 283 U.S. 209, 216, 51 S.Ct. 453, 456, 75 L. Ed. 983 (1931):

> [T]his does not mean that the jury is at liberty, under the guise of passing upon the credibility of a witness, to disregard his testimony, when from no reasonable point of view is it open to doubt.

■■ The plaintiff argues, however, that the jury was not required to accept Jurvis' testimony because of possible bias and interest in the outcome of the case. This claim of partiality is based solely upon the fact that Jurvis' employer, the manufacturer of the wheel, had been doing a substantial amount of business with Ford Motor Company. Some decisions contain language to the effect that the testimony of an interested witness always creates a jury question as to credibility. We decline to adopt any such absolute rule. Each case must turn upon its individual facts. Where the interest of the testifying witness in a particular outcome of the pending litigation is substantial, his possible bias may be sufficient in itself to create a jury question as to credibility. On the other hand, where the interest of the witness is altogether remote or indirect a jury should not be permitted to speculate as to veracity. Between these two extremes various gradations of bias are possible. In these neither-fish-nor-foul cases the decision to submit the question to the jury must depend not only upon interest but also on various additional factors, including the inherent plausibility of the testimony and its contradiction or corroboration by the other evidence. For example, in Chesapeake & O. Ry. Company v. Martin, *supra,* the Supreme Court held that the fact that the witness was an employee of a party-litigant—a direct and much more substantial relationship than that presented here—was not enough to create a jury question as to his veracity. *See also* Central Truck Lines v. Lott, 249 F.2d 722 (5th Cir. 1957); *cf.* Falk v. C. I. R., 332 F.2d 922, 927 n.6 (5th Cir. 1964). *See generally* Ferdinand v. Agricultural Insurance Co., 22 N.J. 482, 126 A.2d 323, 62 A.L.R.2d 1179 (1956), and annotation following, 62 A.L.R.2d 1191(1958).

■ Jurvis' testimony reveals no lack of candor. On cross-examination the plaintiff did not explore his testimony on this critical point. When, during the course of cross-examination, the witness stated that he had documentary evidence in his possession on the witness stand which reflected facts about the manufacture date of the wheel, plaintiff's counsel abruptly changed the subject of his inquiry rather than seeking to use such records to question the accuracy of the statements. In this particular case the indirect interest of the witness in the outcome of the case was insufficient to create a credibility question requiring jury resolution. This conclusion is reinforced by the objective nature of Jurvis' testimony which, if untrue, was readily susceptible to impeachment.

On the facts here presented, we simply cannot conclude that any reasonable jury could have disbelieved the testimony which established that the date of the wheel's manufacture was subsequent to the stipulated date of the car's manufacture. Therefore, the wheel introduced in evidence as the steering wheel affixed to the automobile at the time of the accident could not have been the steering wheel which was affixed to the car by Ford at the time of the automobile's manufacture. Thus, assuming that the defect charged—a faulty attachment of the steering wheel to the steering mechanism of the car at the time of the accident—was proven to have existed, the uncontradicted proof established that this defect could not have been created by Ford during the manufacturing proc-

---

3. The division of functions between judge and jury in diversity cases is a question of federal law. Boeing Co. v. Shipman, 411 F.2d 365 (5th Cir. 1969).

ess and it was not proven to have been attributable to this defendant in any other way.

The court below erred in basing its judgment on the jury's verdict.[4] We reverse and remand to the district court with directions to render judgment in favor of the defendant.

Reversed and remanded.

4. In its written opinion denying defendant's motion for judgment notwithstanding the verdict, the trial court acknowledged that it considered the question "a close one."