William McCLURE, Plaintiff-Appellant,

v.

Stanley CYWINSKI, Defendant-Appellee.

No. 80–2648.

United States Court of Appeals,
Seventh Circuit.

Argued March 29, 1982.

Decided Aug. 12, 1982.

542

Mary Lee Leahy, Springfield, Ill., for plaintiff-appellant.

Gerri Papushkewych, Wolfson & Papush-kewych, Springfield, Ill., for defendant-appellee.

Before PELL, SPRECHER[*] and CU-DAHY, Circuit Judges.

PELL, Circuit Judge.

William McClure, the plaintiff-appellant, appeals from the district court's grant of judgment notwithstanding the verdict (judgment n. o. v.) in favor of defendant-appellee, Stanley Cywinski. McClure had alleged that he was entitled to damages pursuant to section 1983, 42 U.S.C. § 1983 (1976), because he was discharged from his position with the Governor's Office of Manpower and Human Development (GOM-AHD) as a result of his insistence on avoiding political involvement in his place of work.

The principal issue on appeal is whether there was no evidence to support the jury's verdict in favor of McClure. This determination turns on two issues: (1) whether there was any evidence that the plaintiff's apolitical attitude was a motivating factor in his discharge and, if there was, whether the district court properly concluded that McClure would have been terminated even in the absence of protected activity, or, alternatively, (2) whether there was any evidence that defendant Cywinski caused McClure's discharge.

McClure also contends that the district court erred in reversing the jury's award of punitive damages. The appellee asserts that, if the judgment n. o. v. cannot stand,

---

[*] Circuit Judge Robert A. Sprecher was assigned to the panel to hear oral argument in this case. He had read the briefs prior to oral argument but was unable to be present at the argument and did not participate thereafter in the decision of the case because of failing health and subsequent death on May 15, 1982.

we should affirm the district judge's alternative disposition, the grant of a new trial.[1]

## I. FACTS

The nature of this appeal requires us to recite at some length the facts presented at trial. Because an appeal from a judgment n. o. v. requires us to consider all facts in the light most favorable to the party opposing the motion, *Konczak v. Tyrrell*, 603 F.2d 13, 15 (7th Cir. 1979), *cert. denied*, 444 U.S. 1016, 100 S.Ct. 668, 62 L.Ed.2d 646 (1980), we shall rely on McClure's version of events where there was a conflict in testimony.

McClure, who had a background in chemistry and had previously worked for state agencies, became aware of an opening in an Occupational Safety and Health (OSHA) program run by GOMAHD in late September or early October, 1977. He discussed with Cywinski the program, which involved consultation with businesses to assist them in meeting OSHA regulations. Cywinski told McClure that the program had to meet certain requirements in order to obtain federal funds and, accordingly, they were looking for an experienced person to manage the industrial hygiene unit and to implement that portion of the program. Cywinski indicated that he was having difficulty finding such a person. Cywinski also stated that he wanted his section managers to have been employed with him before but that he did not require the field staff to be political. McClure made clear to Cywinski that he didn't want to have "anything to do with politics on the job or in relation to the job."

McClure accepted defendant's offer of employment and began work on November 1, 1977. Shortly thereafter, McClure suspected that work he had done regarding qualifications for hygienists had been used to bolster the qualifications of an applicant, Kathy Makos, who Cywinski wanted to hire in order to do a political favor. McClure confronted Cywinski who said that he hadn't intended for McClure to find out about the incident.

Later that November, Cywinski hired Don Ryan, who apparently had no OSHA experience, to work with the program downstate. On that date, and again on February 9, 1978, Ryan gave McClure a calling card which identified Ryan as "GOP Chairman." Although Ryan and McClure were both working in the downstate area, they saw each other only once or twice.

On December 22, 1977, McClure overheard a phone conversation between Cywinski and a person McClure assumed to be Stan Stewart, the agency's attorney. McClure heard Cywinski say, "Makos is okay. She's a senator's friend. McClure is just window dressing. We'll get rid of him later."

The amount of work assigned to McClure dwindled. In late January, 1978, he was told to avoid any further involvement with possible hygienists. In March, Cywinski told McClure not to do any consulting regarding a business in Taylorsville. On March 28, 1978, a secretary began keeping a log of McClure's comings and goings. McClure also testified that his office conditions were substandard: cramped quarters, no phone and no secretary. The defendant did not dispute these facts but introduced evidence that they were common to all or most of the program's employees during the period in question.

On March 30, 1978, McClure taped a phone conversation between himself and Cywinski in which the defendant told McClure to cancel a planned training trip to Alabama. McClure took this tape to the airport and played it for L. William Murray, the agency director. Murray testified that he told McClure it was inappropriate to play the tape at that time but McClure persisted. Murray also testified that he subsequently spoke to Cywinski and then Stan Stewart, the agency counsel, about the tape recording. Stewart told Murray that he thought the recording had been made in violation of state law. Murray therefore decided to discharge McClure.

---

1. We do not need to address this point because of the result we reach regarding Judge Acker- man's granting of the motion for judgment n. o. v.

Murray directed Stewart to prepare the discharge documents without telling him what to put in them. On April 12, 1978, McClure was suspended, pending discharge. The suspension notice did not specifically refer to the taping incident. On May 13, 1978, McClure received a statement of charges. Six charges were enumerated. In summary, these were:

(1) McClure failed to attend a required OSHA training session in Columbus, Ohio from March 27 through March 31, 1978, despite instructions to do so.

(2) McClure failed to report, as directed, to the agency office manager in Springfield.

(3) McClure improperly obtained access to private information contained in the personnel files of other agency employees.

(4) McClure failed to report to his office on numerous occasions between on or about January 12, 1978 and April 11, 1978.

(5) McClure made an unauthorized trip to St. Louis to interview persons for positions in Cywinski's division.

(6) McClure tape recorded the conversation with Cywinski on March 30, 1978.

Stewart testified that the five charges unrelated to the taping incident were included because his experience with civil service proceedings taught that it was best "to throw in everything." Stewart had framed the five additional charges after consulting with other persons, including Cywinski, at the agency.

After McClure was discharged, he appealed his termination to the Illinois Civil Service Commission on May 15, 1978. He withdrew his appeal, however, before presenting any evidence on his own behalf.

On May 5, 1979, McClure filed the instant complaint against Cywinski. Cywinski's motions for directed verdict, made both at the close of the plaintiff's case and at the close of all the evidence, were reserved. The jury returned a verdict in favor of McClure on June 19, 1980, awarding $50,000 compensatory and $75,000 punitive damages. The defendant subsequently moved for judgment n. o. v. or, in the alternative, a new trial. This motion was granted on October 21, 1980.

## II. MERITS

■ A judgment n. o. v. should be denied " 'where the evidence, along with the inferences to be reasonably drawn therefrom, when viewed in the light most favorable to the party opposing such motion is such that reasonable men in a fair and impartial exercise of their judgment may reach different conclusions.' " *Konczak v. Tyrrell,* 603 F.2d 13, 15 (7th Cir. 1979) (*quoting Clemons v. Mitsui O.S.K. Lines, Ltd.,* 596 F.2d 746, 748 (7th Cir. 1979)), *cert. denied,* 444 U.S. 1016, 101 S.Ct. 2044, 68 L.Ed.2d 347 (1980). Implicit in this standard is a recognition that a jury verdict must be allowed to stand if it is supported by circumstantial evidence. A judgment n. o. v. is proper, however, if the verdict is supported only by "sheer speculation and conjecture." *Ruthig v. Saginaw Transfer Co.,* 337 F.2d 393, 395 (7th Cir. 1964).

Both parties, as well as the court below, have assumed that McClure's desire to remain apart from politics brings him within the rule of *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), in which the Supreme Court held that a termination based solely on an employee's political affiliation would be a deprivation of his first amendment rights to freedom of association and freedom of belief. Although we have been referred to no authority directly holding that abstinence from politics constitutes protected activity, we will assume that it does for purposes of this appeal.

The district judge relied on *Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), in deciding this case. We will therefore discuss application of the *Mt. Healthy* test to the case at bar before turning to the separate issue of causation.

### A. Mt. Healthy Test

■ In *Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274,

97 S.Ct. 568, 50 L.Ed.2d 471 (1977), the Supreme Court established a three-step process for analyzing discharge cases involving both constitutionally protected and unprotected activity. The Court stated:

> Initially, in this case, the burden was properly placed upon respondent to show that his conduct was constitutionally protected, and that this conduct was a "substantial factor"—or to put it in other words, that it was a "motivating factor" in the Board's decision not to rehire him. Respondent having carried that burden, however, the District Court should have gone on to determine whether the Board had shown by a preponderance of the evidence that it would have reached the same decision as to respondent's reemployment even in the absence of the protected conduct.

*Id.* at 287, 97 S.Ct. at 576 (footnote omitted). McClure therefore had the initial burden of showing that his apolitical approach was a substantial, although not necessarily the sole, factor for his discharge. *See Nekolny v. Painter*, 653 F.2d 1164, 1166–68 (7th Cir. 1981).[2] If McClure met that burden, Cywinski could have avoided liability by demonstrating that McClure would have been dismissed even if he had not engaged in protected activity.

As noted above, it was conceded in this case that McClure's desire to avoid politics constituted protected activity. The judge below found, as a matter of law, that McClure had failed, however, to prove that his unwillingness to work in a political atmosphere was a motivating factor in his discharge and that Cywinski had carried his burden of proving that McClure would have

been dismissed, regardless of his apolitical stance, because of the taping incident. We will consider each of these two prongs of the *Mt. Healthy* test in turn.

### 1. Was Protected Activity a Motivating Factor in McClure's Discharge?

McClure relies on five facts to support his contention that political considerations were demonstrated to be a motivating factor in his discharge: (1) the "window dressing" comment made by Cywinski; (2) the lack of work assignments; (3) an unsatisfactory working environment; (4) "exclusionary treatment"; and (5) the fact that of the six reasons given for his discharge, only one had any factual support.

Initially, we note that a reasonable juror could have found that political considerations were, in general terms, important to Cywinski. Cywinski's interest in hiring Kathy Makos as a political favor, the hiring of Don Ryan who apparently viewed himself primarily as a politician, Cywinski's reaction when McClure confronted him with his having bolstered Makos' credentials, and the "window dressing" conversation all support such an inference. Similarly, a reasonable juror could have concluded that Cywinski was not wholly pleased with McClure's contribution to the agency. The January prohibition on further involvement with possible hygienists, the dwindling work assignments, and the commencement in March of a log of McClure's comings and goings support this finding. That politics was important to Cywinski and that Cywinski was not wholly pleased with McClure do not, however, by themselves establish that politics

---

**2.** The *Nekolny* court clarified that one cannot properly read *Mt. Healthy* as requiring that the plaintiff demonstrate protected activity to be the *sole* cause of the discharge. Although we completely agree with and follow this proposition, the appellant's reliance on the *Nekolny* case generally is misplaced. The plaintiff relies on the *Nekolny* court's holding that the district judge improperly granted a directed verdict in favor of plaintiff Dumas on the issue whether Dumas was a policymaker and thus excepted from the *Elrod* rule. McClure reads this holding as supporting his argument that Judge Ackerman improperly invaded the province of the

jury in granting judgment n. o. v. on the *Mt. Healthy* issue. A careful reading of *Nekolny* demonstrates, however, that the *Nekolny* court applied the same standard as to the appropriateness of such a judgment as that on which we rely. *Compare Konczak*, 603 F.2d at 15 with *Nekolny*, 653 F.2d at 1170 ("[t]here was ... evidence from which a reasonable juror could conclude that [Dumas] had meaningful input into decisionmaking concerning the nature and scope of a major township program."). The quantity of evidence before the court in *Nekolny* cannot be determinative of the instant case.

was a motivating factor in the decision to dismiss McClure.[3]

Turning to the five factors relied on by McClure, it is significant that the record below indicates that virtually everyone working for GOMAHD at the time McClure did had a less than ideal working environment. Second, we find McClure's claim of exclusionary treatment rather duplicative of his claim that he was provided with few meaningful work assignments. Third, even viewing the evidence in the light most favorable to McClure, the appellant overstates his case when he claims that five of the six reasons given for his discharge lacked any support.[4] A more accurate evaluation is that offered by the appellee: "[T]he strength of the evidence to support each charge varied."

Even if McClure were correct, however, in stating that five of the six reasons for his discharge were unsupported, this case is readily distinguishable from *Fluker v. Alabama State Board of Education*, 441 F.2d 201 (5th Cir. 1971), on which McClure relies. In that case, the Fifth Circuit stated that "to the extent that the absence of factual support for the stated reasons for [a defendant's] action tends to prove that some other constitutionally impermissible reason underlies the action, the courts should examine the credibility of the [defendant's] stated reasons. *Id.* at 209 (dictum) (citation omitted). If one applied this principle to the instant case, and dismissed the five charges as lacking credibility, one would still be faced with the sixth reason given for McClure's discharge: the taping incident. There is no question that factual support existed for this charge. Given this difference between *Fluker* and the instant case, we find the above-quoted language of *Fluker* inapposite to the case at bar.

In our view, the two most persuasive facts on which McClure relies are the "window dressing" comment and the fact that

McClure was given few work assignments by Cywinski. The phone conversation in which Cywinski reportedly referred to McClure as "window dressing" while, in the same breath, stating that Kathy Makos was okay and was a senator's friend occurred three and a half months before McClure's discharge. This lapse of time severely undercuts the weight we might otherwise attribute to this phone conversation. Although we see no clear explanation as to why McClure was given few work assignments by Cywinski, we also see no direct evidence that a distaste for McClure's attitude towards politics was the reason. We also think it relevant that Cywinski was well aware of McClure's attitudes toward politics at the time he hired the plaintiff. Further, Cywinski's reaction when McClure confronted him with the bolstering of Makos' credentials suggests that the defendant was prepared to keep McClure unaware of, and uninvolved in, whatever politics took place in the office. There is absolutely no evidence that Cywinski asked or expected McClure to take an active role in any political activity during his tenure with the agency.

The *Mt. Healthy* test requires the jury to find that the plaintiff's protected conduct was a *motivating* or *substantial* factor in the discharge. This standard is not satisfied if the plaintiff shows only that elimination of the protected activity may have been welcomed by the defendant or even that such activity played some minor role in the discharge decision. On balance, we think the above pattern of events is at most sufficient only to create an inference that Cywinski preferred working with employees who were politically motivated. Whether Cywinski would have *discharged* McClure because of his apolitical attitude is another question. The line between a reasonable inference and "speculation" is not a clear one, but we think that the district judge

---

**3.** For purposes of discussing the *Mt. Healthy* factors only, we will assume that Cywinski could be said to have played a causal role in the appellant's discharge. *But see* Section II(B), *infra*.

**4.** Both parties have devoted considerable attention to the merits of each of the five reasons in their briefs before this court. We find it unnecessary to discuss in detail the validity of each charge.

correctly concluded that no reasonable juror could find that McClure proved that his protected activity was a *motivating* factor in his discharge.

### 2. Would McClure Have Been Discharged Even If He Had Not Engaged in Protected Conduct?

Even if a jury might reasonably have concluded that McClure's dislike of politics in the workplace was a motivating factor in his dismissal, the verdict in favor of the plaintiff cannot stand if no probative evidence supported what apparently was the jury's conclusion that McClure would not have been discharged in any event. McClure poses two arguments as to why the jury might reasonably have found that he would not have been discharged for taping the phone conversation with Cywinski. First, the appellant maintains that the addition of five "meritless" charges indicates that Cywinski himself believed that the taping incident alone was insufficient reason for dismissal. Following this line of reasoning, McClure contends that the jury merely agreed with the conclusion reached by the defendant himself. Second, McClure argues that the jury might reasonably have concluded that his discharge was being implemented well before the tape recording was made.

We find the appellant's first argument completely unpersuasive. The fact that McClure was given six reasons for his discharge and, of those six, five were less significant than the taping incident simply does not support the conclusion that Cywinski believed the taping to be insufficient cause for dismissal. *Res v. Civil Service Commission,* 49 Ill.App.3d 852, 7 Ill.Dec. 924, 365 N.E.2d 209 (1977), on which McClure relies for this point, is inapposite. In *Res,* the civil service commission asserted three charges as grounds for dismissal against an officer at the penitentiary. The circuit court reversed the commission with respect to two of the charges and affirmed with respect to one charge. Because one violation of the kind charged against the defendant was insufficient grounds for dismissal under prison rules, the circuit court held that the officer could only be reprimanded. The critical factor in *Res* was that the sanction ordered by the commission—dismissal—was impermissible if the defendant committed only the single violation. By contrast, GOMAHD was free to discharge McClure "for cause" at any time. No rule required multiple violations in order for the plaintiff to be terminated. Further, there is no indication whatsoever that the *Res* court found the inclusion of two unsubstantiated charges to be an indication that the commission doubted the validity of the third charge. The *Res* court did not engage in the kind of psychological speculation urged by the appellant and we similarly decline to do so.

We turn therefore to the possibility that the jury concluded that McClure's dismissal was being implemented before he taped the phone conversation on March 30, 1978. McClure relies on the "window dressing" conversation, the initiation in late March of a log of his work schedule, and the cancellation of his planned training trip to Alabama. As noted above, these facts certainly support an inference that the agency was displeased with the plaintiff and was beginning to document his activities in preparation for some disciplinary action. To conclude that this action would have been discharge is speculative. To go one step further, as urged by the appellant, and conclude that the discharge decision was already made in the nature of a prochronism, is even more conjectural, and a verdict premised on such dubious reasoning cannot stand.

Finally, McClure cites the doctrine of necessity, Ill.Rev.Stat. ch. 38, § 7–13 (1979); *Stamatiou v. United States Gypsum Co.,* 400 F.Supp. 431 (N.D.Ill.1975), aff'd, 534 F.2d 330 (7th Cir. 1976), for the proposition that the tape recording incident was justified under the circumstances and therefore did not constitute a valid reason for the discharge. The *Stamatiou* case is readily

distinguishable from the case at bar,[5] and we have serious doubts that the doctrine of necessity is applicable to McClure's discharge. Even if the doctrine might have been invoked to excuse the taping incident, we think that it has virtually no relevance to the determination whether the agency believed, at the time it discharged McClure, that the taping incident was a significant violation warranting dismissal.

■ We think that the district court properly applied the test enunciated in *Mt. Healthy City School District Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), and correctly concluded that the verdict in favor of McClure could not stand. Even if the jury could reasonably have found that McClure's protected activity was a motivating factor in his dismissal, which we recognize to be the stronger aspect of the plaintiff's case, they could not reasonably have concluded that the agency would have retained McClure as an employee despite the taping incident.

*B. Causation*

In order for the jury's verdict in favor of McClure to stand, the plaintiff had to show a causal relationship between Cywinski's conduct and McClure's claimed constitutional deprivation. 42 U.S.C. § 1983 (1976); *Monell v. Department of Social Services of New York*, 436 U.S. 658, 691–92, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). Although the jury specifically found that Cywinski had caused McClure's termination, the judge below had no reason to address this aspect of the case in his order granting judgment n. o. v. because he found the *Mt. Healthy* issue conclusive. Although we agree with Judge Ackerman's conclusion regarding application of the *Mt. Healthy* test to this case, we find that the verdict could

not have stood in any event because of McClure's failure to prove causation.

McClure argues that the jury could have found that Cywinski was responsible for the discharge, principally because there was evidence that Cywinski ran the GOMAHD program independently of Director Murray and because of the December 22, 1977 "window dressing" conversation. Cywinski contends, however, that there was uncontradicted and unimpeached evidence that Murray alone was responsible for the discharge and that this testimony is therefore conclusive.

■ The general rule regarding uncontradicted evidence is stated in *Chicago, Rock Island and Pacific Railway Co. v. Howell*, 401 F.2d 752, 754 (10th Cir. 1968) (citations omitted):

The fundamental rule which makes the jury the sole judge of the weight and credibility of testimony is subject to the caveat that testimony concerning a simple fact capable of contradiction, not incredible, and standing uncontradicted, unimpeached, or in no way discredited by cross examination, must be taken as true. And no judgment can be permitted to stand against it.

It follows, and courts have so recognized, that uncontradicted evidence should not be the basis for overturning a jury verdict if the jury might reasonably have doubted the credibility or the accuracy of the witness who testified. *See, e.g., Brown v. Ford Motor Co.*, 479 F.2d 521, 522–23 (5th Cir. 1973); *Chicago, Rock Island and Pacific Railway Co. v. Howell*, 401 F.2d 752, 754–55 (10th Cir. 1968).[6] The test is therefore a two-part one: (1) was the testimony uncontradicted, and if it was, (2) might a reasona-

---

5. *Stamatiou* was an action brought by a wrongdoer against his victims, claiming actual and punitive damages under the eavesdropping statute. The court dismissed the plaintiff's claim, finding that the defendants were without blame in recording conversations with the plaintiff who had attempted to victimize them by theft or extortion.

6. The *Brown* court rejected an argument that the witness who testified, Walter Jurvis, was biased and interested in the outcome of the case because his employer did a substantial amount of business with the defendant. 479 F.2d at 523. The *Howell* court, however, found that the pertinent testimony, considered "in totality of the circumstances" was sufficiently impugned to create a jury question. 401 F.2d at 755.

ble juror have doubted the credibility or accuracy of the testifying witness.

Director Murray testified that he decided to fire McClure because of the taping incident. The agency's counsel, Stewart, corroborated this testimony and claimed that he compiled the charges against McClure at Murray's direction. According to Stewart, it was he who gathered information from Cywinski and others that was eventually embodied in the five additional charges enumerated against McClure. He testified that he did so because his experience with civil service proceedings taught that it was best "to throw in everything."

First, despite McClure's contentions to the contrary, we find nothing that specifically contradicts this testimony. Cywinski's statement in his deposition that he instituted McClure's suspension at Murray's direction is consistent with Murray's testimony. The wording of the suspension notice, which referred to "insubordination" and "conduct unbecoming a state employee" is similarly consistent because these general terms could easily encompass a discharge for arguably illegal taping of a phone conversation with one's superior. The third reason given in the suspension notice, that McClure maintained erratic work hours, and the five additional charges in the formal discharge document admittedly do not refer to the taping incident. The fact that Murray or Stewart may have found *additional* reasons for discharging McClure does not contradict Murray's testimony that he alone made the initial decision to terminate the plaintiff and that his reason for doing so was the taping incident.

We must therefore inquire whether the jury had good reason to doubt the credibility of Murray's and Stewart's testimony. The reasoning of the *Howell* court is not directly analogous because there was no question in that case that the testifying engineer was sincerely reporting facts as he remembered them; rather, the court believed that he might have confused the fire relevant to that litigation with a fire that occurred earlier in the same locality.

In the present case, we do not think that Murray's lack of familiarity with the daily operations of the GOMAHD program renders his testimony less than credible. Murray never claimed that he was in touch with the daily operation of the program, in which he supervised over three hundred people. Further, at the time of his testimony, he had not been involved with the agency for two years. We find it completely credible that a person who delegated many aspects of running the agency to Cywinski would nonetheless make the decision to terminate an employee who accosted him at the airport with an illegally obtained tape recording, especially when McClure insisted on playing the recording over Murray's protests that it was neither the proper time nor place to do so. It is also quite believable that, having made the decision to discharge McClure, Murray would delegate the responsibility for compiling the necessary paperwork to Stewart. Because Murray's actions are wholly consistent with his position as director of a large agency and because we find no evidence in the record to indicate that Murray had a personal bias either in favor of Cywinski or against McClure, we conclude that the jury could not reasonably have doubted his uncontradicted testimony as to who made the termination decision.[7]

Cywinski's "window dressing" comment does not alter our conclusion that McClure failed to demonstrate that Cywinski caused his discharge. McClure relies on *D'Andrea v. Adams*, 626 F.2d 469, 473 (5th Cir. 1980), *cert. denied*, 450 U.S. 919, 101 S.Ct. 1365, 67 L.Ed.2d 345 (1981), as support for his contention that the "window dressing" conversation supports at least an inference of Cywinski's "active participation" in the discharge decision. In *D'Andrea*, however,

---

**7.** McClure also argues that the jury might have doubted Stan Stewart's credibility because Stewart also testified that he did not hear Cywinski refer to McClure as "window dressing" during the December, 1977 phone conversation. Even if the jury had some reservations about Stewart's honesty, those doubts would be relevant only to Stewart's corroboration of Murray's testimony; they do not affect our conclusion that Murray's testimony itself was both uncontradicted and wholly credible.

**550**

there was no issue as to whether the defendant university administrators had "caused" the plaintiff's termination. The Fifth Circuit was instead concerned with whether all of the administrators knew of the plaintiff's protected speech activity. Only if the administrators knew of D'Andrea's statements could the protected activity have been a substantial or motivating factor in their decision to terminate the plaintiff. In light of testimony that a discussion regarding D'Andrea's "disloyalty" had occurred in the presence of all four administrators, the court found an inference of their knowledge to be reasonable. We find *D'Andrea*, which did not discuss causation, of little help to McClure. We well recognize that a jury verdict must stand if it is based on reasonable inferences. One cannot conclude, however, that because Cywinski may have *wanted* to terminate McClure in December, he is necessarily the person who did so in April without engaging in speculation.

McClure is similarly not helped by *Haimowitz v. University of Nevada*, 579 F.2d 526, 530 (9th Cir. 1978) (per curiam). In that case, the appellees argued that any improper bias was only at the advisory level and was therefore too far removed from the actual decisionmaking to be relevant. The Ninth Circuit rejected this argument. In the instant case, however, there is insufficient evidence to support an inference that Cywinski recommended McClure's termination to Murray. We therefore conclude that the jury verdict in favor of McClure could not stand, in any event, because of McClure's failure to prove that Cywinski played an active, causal role in his discharge.

### III. CONCLUSION

Because of our conclusion that the district judge properly granted judgment n. o. v. in the case at bar, we need not address the question whether the judge below correctly granted the alternative motion for a new trial.

The judgment of the district court is hereby

AFFIRMED.

CUDAHY, Circuit Judge, concurring:

First, I think it important to emphasize that whether maintenance of an apolitical stance, in and of itself, constitutes protected first amendment activity has been assumed here and is uncontested. Judge Pell's opinion for the panel does not decide this question.

Second, despite Judge Pell's extremely able arguments to the contrary (reinforcing Judge Ackerman's conclusions), I believe that there was minimal, though sufficient, evidence upon which the jury could have concluded that McClure's apolitical attitude was a motivating factor in his discharge. I agree with Judge Pell, however, although the question is close, that there was *insufficient* evidence for the jury to conclude that McClure would not have been fired but for his protected activity.

Third, I concur fully—and this is the strongest ground upon which we stand—in Judge Pell's conclusion that there was insufficient evidence for the jury to find that Cywinski *caused* McClure's discharge.

With these exceptions and additional comments, I join Judge Pell's careful and persuasive opinion for the panel.