Charles J. BAFIA, Plaintiff–Appellee,

v.

NORTHERN INDIANA PUBLIC SERVICE COMPANY, Defendant–Appellant.

No. 92–1926.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 8, 1992.

Decided May 21, 1993.

Matthew J. Morrissey, Magiera & Morrissey, Chicago, IL (argued), Ronald Layer, Sachs & Hess, Hammond, IN, for plaintiff-appellee.

David C. Jensen, Eichhorn, Eichhorn & Link, Hammond, IN (argued), Jon M. Pinnick, Eichhorn, Eichhorn & Link, Merrillville, IN, for defendant-appellant.

Before CUDAHY and COFFEY, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

CUDAHY, Circuit Judge.

The plaintiff, an elevator repairman, sued the defendant utility company for injuries he sustained while servicing an elevator in the defendant's building. After a bench trial, the district court found in favor of the plaintiff and awarded him $475,000. The defendant appeals. We affirm.

### I.

The defendant, Northern Indiana Public Service Company (NIPSCO), an Indiana corporation, operates an electrical power generating station, the R.M. Schahfer Generating Station, in Wheatfield, Indiana. NIPSCO contracts with Otis Elevator Company (Otis) for the maintenance of several elevators in the Wheatfield facility. Otis maintenance workers provide preventive maintenance by regularly inspecting the elevators and lubricating and changing worn mechanical parts. The standard Otis maintenance contract excludes the elevator cab, however, which is not considered a maintenance item because it is not a mechanical device. Otis conducts regular routine preventive maintenance on the NIPSCO elevators and also repairs elevators upon specific request.

On July 7, 1988, a NIPSCO security guard was trapped in the No. 17 boiler house elevator when it unexpectedly stopped between floors. Two NIPSCO master electricians helped rescue the guard by directing him to climb through a hatch door in the ceiling, walk across the top of the elevator car and climb up to the third floor landing. In the course of the rescue, the security guard and one of the NIPSCO employees, John Yurtanas, were on top of the elevator for no more than five minutes.

The next day, Charles Parsons, an Otis service man, was sent to the Wheatfield facility to service the No. 18 boiler house elevator. The plaintiff, Charles Bafia, a resident of Illinois, was assigned as Parsons' helper. Upon checking in, Parsons and Bafia met with Yurtanas, who served as a liaison between NIPSCO and Otis. Yurtanas informed them that the No. 17 elevator was inoperable and asked them to work on it first.

Parsons and Bafia rode the No. 18 elevator to the fourth floor and walked back to the No. 17 elevator, finding the hoistway door, which leads into the elevator shaft, to be open. A key, held by NIPSCO's maintenance department, is required to open the door. Parsons and Bafia then rode the No. 18 elevator to the top floor and crossed over to the No. 17 elevator's machine room. They brought the elevator up to where they had access to the top of it and proceeded to repair the car. Bafia then stepped onto the car top while Parsons entered the car to check its operation. Once the elevator was working properly, Parsons rode it to the ground floor and instructed Bafia to walk across the car top and enter the car through the emergency exit. At that time, Parsons heard a loud bang as the rear panel of the car's ceiling fell to the elevator floor, together with Bafia, who was badly injured.

Bafia and NIPSCO stipulated at trial that Bafia sustained injuries when he stepped on a rear panel of the elevator cab roof and both he and the panel fell through to the floor of the cab. After paramedics took Bafia to a hospital, Parsons observed that the ceiling panel was hinged in two places so it could be lifted upward, allowing NIPSCO to carry long lengths of pipe in the elevator during the construction of the facility. The pins in the hinges were inserted with one end "peened over" so they would not vibrate out of position; they thus required a hammer and a tool called a drift pin to be removed. Parsons noticed that one pin was missing from one hinge, but his search for that pin was unsuccessful. The Otis repair man who later reinstalled the ceiling panel in the No. 17 elevator also looked for the missing pin in the elevator car and on top of the elevator but to no avail.

On one side of the hinge, the bolts and screws are flat, but on the other side a hex bolt was used; the hex bolt was shiny, but the flat bolts and screws were darkened and discolored, like the hinge. Parsons opined that the presence of different types of screws or bolts of apparently varying ages meant that someone must have repaired the hinge.

Otis's work is divided among three departments: service, maintenance and construction. The maintenance workers maintain elevators according to contracts prescribing a schedule of maintenance; service calls, on the other hand, are requested in each instance by a customer, charged to the customer and specifically documented in service records. Otis's "call-back sheets," which document customer service requests, do not indicate any service requested or performed on the No. 17 ceiling panels or hinges between 1982 and 1990. Lawrence Verzak, Otis's service superintendent, did not recall ever sending a service crew to NIPSCO to repair the car top of an elevator. Parsons also testified that he had never provided any service or maintenance to the hinge, which is not mechanical and is therefore not considered a maintenance item. Because NIPSCO is obligated to pay for service and repair separately from the maintenance agreement, there would normally be a record of any NIPSCO request that Otis send an employee to repair No. 17's car top.

## II.

Bafia filed this diversity action against NIPSCO on May 30, 1989, in the U.S. District Court for the Northern District of Indiana, contending that NIPSCO was negligent because NIPSCO altered or modified the ceiling panel on the No. 17 elevator, rendering the car top unsafe. In his conclusions of law, the district judge admitted that there was no direct evidence as to how the pin was removed from the hinge, and also rejected Bafia's argument that the doctrine of *res ipsa loquitur* applied.[1] The court nevertheless concluded that NIPSCO was negligent because it knew or reasonably should have known that the pin was missing from one of the hinges on the elevator car top. Based upon NIPSCO's tight security measures, the unlikelihood that the pin would vibrate out of the hinge or that an Otis employee would intentionally remove it and fail to replace it, the lack of a service record for any such maintenance or repair and the evidence that the hinge had been altered, the district court concluded that "[t]he reasonable, logical inference that NIPSCO, or someone other than an Otis employee who was subject to NIPSCO's direction or control, intentionally removed the pin and negligently failed to replace it may be drawn from the evidence without undue speculation." Order at 42. The court accordingly entered judgment against NIPSCO in the amount of $475,000. NIPSCO appeals.

## III.

 The sole issue on appeal is whether the findings of fact on which the district court based its determination of liability are clearly erroneous. *See* Fed.R.Civ.P. 52(a). A trial court finding may be set aside as

---

1. The court noted that to apply *res ipsa loquitur,* the court would have to find, by permissible inference, that the pin was rendered missing when the elevator was in NIPSCO's exclusive control between the time the security guard was rescued and the point that Bafia and Parsons began work on it. In its conclusions of law, however, the court stated that "[t]his inference is not reasonable and will not support the application of the doctrine." Order at 40–41.

clearly erroneous when, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948); *see also Ratliff v. City of Milwaukee*, 795 F.2d 612, 617 (7th Cir.1986) (district court's findings clearly erroneous when "implausible, illogical, internally inconsistent or contradicted by documentary or other extrinsic evidence"). Reasonable inferences from the evidence are permissible, *Ruthig v. Saginaw Transfer Co.*, 337 F.2d 393, 395 (7th Cir.1964), but inferences must be reasonably supported by the evidence and cannot be mere speculation or surmise. *Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1324 (11th Cir.1982); *National Indus., Inc. v. Republic Nat. Life Ins. Co.*, 677 F.2d 1258, 1267 (9th Cir.1982).

■ The case before us essentially turns on whether the district court's determination of negligence rests upon reasonable inference or speculation. Under Indiana negligence law, a landowner owes a duty to a business invitee such as Bafia to exercise reasonable care to discover possibly dangerous conditions and to take reasonable precautions to protect the invitee. *Persinger v. Marathon Petroleum Co.*, 699 F.Supp. 1353, 1360 (S.D.Ind.1988). A landowner is liable to an independent contractor if it actively participates in the negligent act causing injury or if it fails to warn of hidden dangers on the premises that it knew of or ought to have known of and that the contractor did not know of. *Id.* at 1361–62; *Nagler v. United States Steel Corp.*, 486 F.2d 794, 797 (7th Cir.1973). We therefore must determine whether the district court's finding that NIPSCO had the requisite knowledge of the danger or defect had a sufficient evidentiary basis.

■ On this record it is impossible to know with certainty what actually happened to the pin from the elevator's top panel. Nevertheless, we believe the evidence supports the district judge's conclusion that NIPSCO or someone subject to NIPSCO's direction removed the pin and therefore that NIPSCO had knowledge or constructive knowledge of the missing pin. The judge is not permitted to speculate, but his conclu-

sion—though necessarily based on inference—is not merely guesswork. Admittedly, many inferences supporting the district court's conclusion were negative: for example, the court presumed that Otis could not have removed the pin because service records would have documented such maintenance work, and that an outsider could not have removed it because of the facility's tight security. Yet no one disputes that the pin was removed. Consequently, when coupled with the evidence that NIPSCO was responsible for the care of the elevator cab and that Otis employees evidently did not service the ceiling panel prior to the accident, these inferences are sufficiently substantiated by the evidence and the district court's findings are not clearly erroneous.

### IV.

For the foregoing reasons, we AFFIRM the ruling of the district court.