[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

———————————————

No. 00-12757

———————————————

D. C. Docket No. 98-02026-CV-H-NE

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 17, 2001
THOMAS K. KAHN
CLERK

MICHAEL JOEL PENNINGTON,

Plaintiff-Appellant,

versus

CITY OF HUNTSVILLE,

Defendant-Appellee.

———————————————

Appeal from the United States District Court
for the Northern District of Alabama

———————————————

**(August 17, 2001)**

Before ANDERSON, Chief Judge, HULL and COX, Circuit Judges.

ANDERSON, Chief Judge:

Plaintiff Michael Pennington appeals the district court's order granting summary judgment in favor of Defendant City of Huntsville ("City") on his employment discrimination and retaliation claims. Pennington alleged discrimination and retaliation under Title VII of the Civil Rights Act of 1964, as amended, and 42 U.S.C. §§ 1981 and 1983. Because we find that the district court properly granted summary judgment, we affirm.

## I. BACKGROUND

As part of a pretrial order, the parties submitted an agreed summary of the facts of the case. Below we set forth a condensed version of the facts relevant to the issues we discuss. Beginning in 1988, Pennington worked as a Recreational Aide for the City at the Scruggs Center. In 1994, he filed a grievance with the City, seeking a religious accommodation. Following the grievance, Pennington was transferred to the Westside Center as a Recreational Aide.

Pennington applied for a promotion to the position of Neighborhood Services Programmer ("Programmer") in March of 1996. The City's personnel department selected five people, including Pennington, for interviews. After the interviews, Joey Flanders was selected for the position. Pennington then filed a grievance with the City, alleging that he was denied the promotion because of

2

retaliation and race discrimination.  Mia Puckett, the City's Equal Employment Officer, determined that Pennington's prior religious accommodation may have been considered in the selection process.  The record indicates that Puckett sent a memorandum to Richard Liles, the head of the Department of Parks and Recreation, stating:

> In this selection process, the initial recommendation was biased.  The Zone Coordinator [Hughes] was heavily involved in the religious accommodation of Mr. Pennington. It is my opinion that the Zone Coordinator was unable to separate the emotions and events surrounding the religious accommodation in late 1994/early 1995 and the qualifications of Mr. Pennington for the position.

(Puckett Mem. (Doc. 002179-80).)  She concluded that the selection process "resulted in retaliation against Mr. Pennington." (Id.)

Following this finding, the City rescinded Flanders' job offer.  Liles conducted new interviews and, according to the record, evaluated the candidates' writing samples.  After the new interviews and writing evaluations, Flanders was again selected as a Programmer for the Scruggs Center.  However, this time Pennington was offered the Programmer position at the Calvary Hills Center.  In addition, Pennington's offer was subject to conditions that were not imposed on Flanders.

Although not mentioned in the parties' summary of the facts, our review of the record indicates the following facts are undisputed.  Pennington's promotion

3

was premised on two conditions: (1) participation in a writing skills program and (2) agreeing to additional evaluations at three months and six months after the promotion. Liles explained that the additional performance evaluations were necessary because Pennington had never worked at the Calvary Hills facility before and he was concerned about Pennington's familiarity with other community activities there. Liles also indicated that he wanted to personally conduct these evaluations himself to make sure that Pennington did not receive any retaliation for his past religious accommodation from his supervisors. The writing skills were necessary because Liles found that Pennington's writing lacked detail.

Pennington claims that he communicated his acceptance to Liles both verbally and in writing, even though it was not required to be in writing. The City asserts that Pennington would one day verbally accept and another day deny acceptance of the promotion. It is undisputed that Liles then wrote a memo to Pennington, requesting that he respond in writing that he was accepting the promotion and all its conditions. Pennington responded that he would submit a written acceptance when the City placed its conditions in writing. Liles did not put the conditions in writing, and Pennington never accepted in writing.

4

Pennington filed this retaliation lawsuit[1] in 1998, claiming that the City retaliated against him for his prior request for religious accommodation. The district court granted the City's motion for summary judgment on the grounds that Pennington had not established a prima facie case of retaliation and that Pennington had not refuted the City's legitimate, non-retaliatory reasons for its decisions. See Pennington v. City of Huntsville, 93 F. Supp. 2d 1201 (N.D. Ala. 2000). Throughout the pendency of this lawsuit, Pennington has remained in his position as a Recreational Aide.

## II. DISCUSSION

We review de novo the district court's order granting summary judgment. See Whatley v. CNA Ins. Cos., 189 F.3d 1310, 1313 (11th Cir. 1999). Summary judgment is appropriate where there is no genuine issue of material fact. See Fed. R. Civ. P. 56(c). On a motion for summary judgment, we review the facts and all

---

[1]Pennington also sued for race discrimination. Pennington adduced no evidence of race discrimination, and we affirm the district court's grant of summary judgment in favor of the City without need for further discussion. Thus, the only claims warranting discussion are claims that the City retaliated against Pennington.

A plaintiff cannot make a claim of retaliation based on religion under § 1981. See Saint Francis Coll. v. Al-Khazraji, 481 U.S. 604, 613, 107 S. Ct. 2022, 2028 (1987). Thus, to the extent that Pennington's complaint can be construed as raising a § 1981 retaliation claim, it is without merit.

5

reasonable inferences in the light most favorable to the non-moving party. See Whatley, 189 F.3d at 1313.

All of Pennington's claims relate to two incidents in 1996: Hughes' initial decision to promote Flanders instead of Pennington to Programmer at the Scruggs Center; and Liles' decision to offer Pennington a conditional promotion at the Calvary Hills Center.[2] Because Pennington's claims under § 1983 and Title VII generally have the same elements of proof and use the same analytical framework, we will only explicitly address the Title VII claims unless otherwise noted. See Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1330 (11th Cir. 1998); Richardson v. Leeds Police Dep't, 71 F.3d 801, 805 (11th Cir. 1995).

Pennington has not challenged the district court's finding that no direct evidence of retaliation exists. Hence, the only dispute on appeal is whether Pennington presented sufficient circumstantial evidence to avoid summary judgment. We address Pennington's claims in reverse chronological order, starting with the conditional promotion decision.

A. Conditional Promotion

[2]Pennington also argues that he was discriminated against because the City did not process his promotion. Based on Pennington's admission that he was aware of the conditions on his promotion, we find that the City's refusal to accede to Pennington's unauthorized demand that the City put the conditions in writing is not evidence of discrimination or retaliation. Pennington could have accepted the promotion with these conditions at any time. He failed to do so, and thus this claim has no merit.

6

Pennington argues that the City retaliated against him by placing conditions on his promotion to the Calvary Hills position.[3] "To establish a prima facie case of retaliation under Title VII, a plaintiff must show that (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) there is some causal relation between the two events." Olmsted v. Taco Bell Corp., 141 F.3d 1457, 1460 (11th Cir. 1998) (citing Meeks v. Computer Associates Int'l, 15 F.3d 1013, 1021 (11th Cir. 1994)).  The causal link element is construed broadly so that "'a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated.'" Olmsted, 141 F.3d at 1460 (quoting E.E.O.C. v. Reichhold Chem., Inc., 988 F.2d 1564, 1571-72 (11th Cir. 1993)).  Once a plaintiff has established a prima facie case, the employer then has an opportunity to articulate a legitimate, non-retaliatory reason for the challenged employment action. Olmsted, 141 F.3d at 1460; Meeks, 15 F.3d at 1021.  The ultimate burden of proving by a preponderance of the evidence that the reason provided by the employer is a pretext for prohibited, retaliatory conduct remains on the plaintiff. Olmsted, 141 F.3d at 1460.

---

[3]To the extent that Pennington argues retaliation based on promotion to the Calvary Hills position rather than the Scruggs position, we reject such argument as meritless and warranting no discussion.

Although we have considerable doubt about whether Pennington can satisfy the elements of a prima facie case, particularly the adverse employment action prong,[4] we assume arguendo that Pennington has established a prima facie case, because we find the City's legitimate reasons for the decision are dispositive. Richard Liles decided that two conditions should be attached to Pennington's promotion at Calvary Hills--participation in a writing program, and agreeing to evaluations after three and six months as a Programmer. As to both of these conditions, Liles proffered legitimate, non-retaliatory reasons. On the first condition, Liles stated that his review of Pennington's writing sample indicated that his writing lacked detail. As to the additional performance evaluations, Liles explained that he had concerns about Pennington's ability to handle community-based programming at Calvary Hills because plaintiff had been exposed to mostly

---

[4]Indeed, the district court found that Pennington had failed to establish an adverse employment action. See Pennington, 93 F. Supp. 2d at 1214. The court noted that the crucial question was whether the conditions imposed amounted to an adverse employment action, and it found that neither of these conditions were objectively adverse. See id. at 1214-15.

Additionally, on the causal link prong of the prima facie case, the mere fact that Pennington had two years earlier requested and was granted an accommodation for his religious beliefs, is not sufficient to create a genuine issue of fact that there was a causal relationship between Liles' decision and Pennington's previous request for religious accommodation. In Maniccia v. Brown, 171 F.3d 1364, 1369 (11th Cir. 1999), we noted that gaps of 15 and 21 months between the employee's and employer's respective actions were too great to support a causal nexus. Here, the two year break between Pennington's grievance and Liles' decision probably would prevent a court from finding a causal nexus as well. However, we assume arguendo not only the adverse employment prong, but also the causal link prong.

8

athletic programming previously; and he also explained that he wanted to make sure that Pennington would not experience retaliation from his supervisors.

The City having proffered legitimate reasons, Pennington has the burden of establishing that the City's reasons are pretextual. Pennington is not able to do so. Pennington points out that in his interview Liles mentioned the prior interview and the possible bias that was involved, but nothing in the depositions suggests that these remarks were evidence of a retaliatory motive toward Pennington. Rather, the record indicates that Liles raised these issues to explain the need for the re-interview.

Pennington next argues that the writing program was not necessary because Liles stated that he had passed the writing test and because Liles had no specialized training in the area to enable him to discern which employees needed additional writing training. These objections are insufficient because "a plaintiff employee may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reason" as long as "the reason is one that might motivate a reasonable employer." Combs v. Plantation Patterns, 106 F.3d 1519, 1543 (11th Cir. 1997) ("[F]ederal courts do not sit to second-guess the business judgment of employers."). A reasonable employer might be motivated by a perceived lack of detail in an employee's writing to require that employee to

9

undergo additional training. Significantly, Pennington, when pressed in deposition, could not say that the two conditions were unreasonable.

Pennington also complains that no other employee was subjected to additional evaluations at three and six months. However, these evaluations were justified by Pennington's inexperience with community-based programming. Pennington does not deny his lack of experience; instead, he argues that such conditions would not have been necessary if he was promoted at Scruggs. This is a challenge to the City's business judgment in deciding to promote him at Calvary Hills rather than Scruggs.

For the foregoing reasons, and because Pennington has failed to show any causal connection between Liles' decision and Hughes' prior decision, see infra Part II.B., we conclude that Pennington has failed to adduce sufficient evidence to create a genuine issue of fact that Liles' reasons for the conditions imposed were not the real reasons. Therefore, Pennington has not met his burden to show that the City had a retaliatory intent when it promoted him at Calvary Hills, and the district court properly granted summary judgment on this claim.

B.    Initial Promotion Decision

We now turn to the initial decision by Hughes to promote Flanders instead of Pennington. As to this decision, we assume arguendo that Pennington has

10

adduced sufficient evidence to establish the elements of a prima facie case. The first element is not in dispute: Pennington filed a grievance seeking a religious accommodation.

With respect to the second element, generally the denial of a promotion is an adverse employment action. See Walker v. Mortham, 158 F.3d 1177, 1187 (11th Cir. 1998). However, the district court found that Pennington suffered no adverse employment action because Hughes' decision was quickly reversed by Liles who offered Pennington the desired promotion. The caselaw in this area indicates that the decision to reprimand or transfer an employee, if rescinded before the employee suffers a tangible harm, is not an adverse employment action. See Breaux v. City of Garland, 205 F.3d 150, 158 (5th Cir. 2000); Dennis v. County of Fairfax, 55 F.3d 151, 156 (4th Cir. 1995); Blalock v. Dale County Bd. of Educ., 84 F. Supp. 2d 1291, 1311 (M.D. Ala. 1999). But when an employee loses pay or an employment benefit from a delayed promotion, courts have held that the employment action is not adverse only when the action is rescinded and backpay is awarded. See Dobbs-Weinstein v. Vanderbilt University, 185 F.3d 542, 544 (6th Cir. 1999); Benningfield v. City of Houston, 157 F.3d 369, 378 (5th Cir. 1998); see also Miller v. Federal Express Corp., 56 F. Supp. 2d 955, 960 (W.D. Tenn. 1999) (rescinding termination did not render action non-adverse in part because plaintiff

11

lost five days of pay and bonuses). Whether the City has offered Pennington backpay to the date of Hughes' decision to deny his promotion is not clear from the record, and indeed we would not expect such backpay to be awarded until Pennington accepts his new position, which it does not appear that he has done. For the purpose of our analysis here, we will assume arguendo, but expressly do not decide, that his initial denial of a promotion was an adverse employment action.

With respect to the causal link element, Pennington has adduced evidence sufficient to create an inference that Hughes' decision not to promote Pennington was influenced in part by Pennington's filing of a religious accommodation grievance. The best evidence was supplied by Mia Puckett's memorandum to Liles and her notes on her meeting with Hughes. Puckett's memorandum to Liles stated that Hughes' promotion decision was probably biased by his being involved in Pennington's religious accommodation. The basis for this opinion is not clear. During a meeting with Hughes, Puckett wrote that Hughes had relied upon "negative info" although the meaning of her notation is ambiguous. (Puckett Notes (Doc. 000782).) At one point she wrote, "Michael's File--Negative info--grievance 2 yrs ago--Tony's notes in Mike's file," and at another point, "Negative--way Mr. Pennington reacted to the transfer from Scruggs based on religious

accommodation." (Puckett Notes (Doc. 000782-83).) In her deposition, Puckett was not able to clarify the meaning of "negative info" in her notes. It is possible that Hughes relied upon a legitimate reason (Pennington's negative reaction to being transferred), or that he relied in part on an illegal consideration (the fact that Pennington filed a religious accommodation grievance). Because the basis for Puckett's opinion that Hughes' decision was biased is not clear from the record, a genuine issue of material fact exists as to whether Pennington can establish the causal link element.

In light of Pennington's satisfaction of the first prong (protected expression) and our assumption without decision of the second prong (adverse employment action), and the genuine issue of fact with respect to the third prong (a causal link), we assume <u>arguendo</u> the prima facie case, and we examine the legitimate, non-retaliatory reasons offered by Hughes for his selection of Flanders instead of Hughes. He states that he relied on his limited personal knowledge of the candidates, their responses to interview questions, and contents of their personnel files, including evaluations and attendance records. He also noted that he was particularly impressed with Flanders having received highly favorable evaluations from two supervisors.

In light of Puckett's report, however, we assume arguendo that Pennnington has created a genuine issue of fact that Hughes' decision was motivated in part by retaliation. Thus, we turn to the City's mixed-motive defense--i.e., the question of whether the City has established that it would have made the same decision without an illegal motive. We conclude that the record is clear that the City would have made the same decision. See Harris v. Shelby County Bd. of Educ., 99 F.3d 1078, 1085 (11th Cir. 1996) (assuming that plaintiff could establish a prima facie case, but finding the evidence overwhelming that defendant would have made the same decision); Marshall v. City of Cape Coral, 797 F.2d 1555, 1561 (11th Cir. 1986) (same); see also Stanley v. City of Dalton, 219 F.3d 1280, 1293-94 (11th Cir. 2000) (refusing to grant judgment as a matter of law where issue remained as to whether employer would have made the same decision).

In both Title VII and § 1983 lawsuits, the Supreme Court has recognized that an employer can avoid liability if it can prove that it would have made the same disputed employment decision in the absence of the alleged bias. See Price Waterhouse v. Hopkins, 490 U.S. 228, 258, 109 S. Ct. 1775, 1795 (1989) (Title VII); Mt. Healthy Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287, 97 S. Ct. 568, 576 (1977) (§ 1983). It is clear that this mixed-motive defense remains good law in § 1983 cases. See Harris, 99 F.3d at 1085. But with the Civil Rights Act of

14

1991, Congress overruled in part the Price Waterhouse v. Hopkins holding regarding the mixed-motive defense in Title VII cases. The Act did so by reinstating limited damages for discrimination based on "race, color, religion, sex and national origin . . . , even though other factors also motivated the practice." 42 U.S.C. § 2000-2(m). Although the 1991 Act overruled in part the mixed-motive defense with respect to discrimination suits based on race, color, sex, and national origin, this circuit and other circuits have held that the mixed-motive defense is still available in retaliation cases. In Lewis v. Young Men's Christian Ass'n, 208 F.3d 1303, 1305 (11th Cir. 2000), we held that the relevant sections of the 1991 Act did not apply to mixed-motive retaliation claims under the Age Discrimination in Employment Act ("ADEA"). We stated that the 1991 Act overruled and limited the mixed-motive defense only in discrimination cases based on race, color, religion, sex and national origin, but left the defense intact for retaliation cases. Id. It is true that Lewis was a retaliation case in the context of an ADEA claim, whereas the instant case is a retaliation case brought under TitleVII. However, the reasoning of Lewis applies with equal force in this context. Moreover, we typically apply legal standards developed in Title VII and ADEA cases interchangeably. See, e.g., Chapman v. AI Transport, 229 F.3d 1012, 1024 (11th Cir. 2000) (en banc) (applying framework established in McDonnell Douglas Corp.

15

<u>v. Green</u>, 411 U.S. 792, 93 S. Ct. 1817 (1973), a Title VII case, to the ADEA). Therefore, we hold that the mixed-motive defense remains good law not only with respect to Pennington's § 1983 retaliation claim, but also with respect to his Title VII retaliation claim. On this point, we are in agreement with all other circuits that have considered this issue. <u>See</u> <u>Matima v. Celli</u>, 228 F.3d 68, 81 (2d Cir. 2000) (holding that the <u>Price Waterhouse</u> analysis applies to retaliation claims under Title VII); <u>Norbeck v. Basin Elec. Power Coop.</u>, 215 F.3d 848, 852 (8th Cir. 2000) (same); <u>Kubicko v. Ogden Logistics Servs.</u>, 181 F.3d 544, 552 n.7 (4th Cir. 1999) (same); <u>McNutt</u>, 141 F.3d at 709 (same); <u>Woodson v. Scott Paper Co.</u>, 109 F.3d 913, 935 (3d Cir. 1997) (same); <u>Tanca v. Nordberg</u>, 98 F.3d 680, 684 (1st Cir. 1996) (same). Thus, the City may prevail on both the Title VII and § 1983 retaliation claims if it proves that it would have made the same decision absent Hughes' alleged bias. We now turn to that inquiry.

Even assuming that Hughes was also influenced in part by retaliatory animus, Liles' actions confirm that the City would have made the same decision regarding the promotion. After Puckett reported that Hughes' decision may have been tainted, Liles rescinded the initial promotion of Flanders, and personally conducted a fresh set of writing tests and interviews of Flanders and Pennington. No one who had participated in the previous, now rescinded, selection of Flanders

16

participated in Liles' decisionmaking. Liles independently reached the decision that Flanders, rather than Pennington, should be promoted to the Programmer position at the Scruggs Center. Liles decision to offer Pennington the Programmer position at the Calvary Hills Center is additional evidence that Liles harbored no retaliatory motive toward Pennington.

Upon a thorough review of the record, we find no evidence that suggests that Liles' decision was tainted either by the previous Hughes' decision or by any other retaliatory animus towards Pennington. Where a decisionmaker conducts his own evaluation and makes an independent decision, his decision is free of the taint of a biased subordinate employee. See Wright v. Southland Corp., 187 F.3d 1287, 1304 n.20 (11th Cir. 1999) (finding that biased employee did not manipulate the final decisionmaker); Llampallas v. Mini-Circuits, Lab, Inc., 163 F.3d 1236, 1249 (11th Cir. 1998) (finding that decisionmaker's employment decision was not causally related to a subordinate's discriminatory animus); Willis v. Marion County Auditor's Office, 118 F.3d 542, 547 (7th Cir. 1997) ("[W]hen the causal relationship between the subordinate's illicit motive and the employer's ultimate decision is broken, and the ultimate decision is clearly made on an independent and a legally permissible basis, the bias of the subordinate is not relevant."). Pennington adduced no evidence that Liles' decision was tainted by Hughes'

17

decision or the retaliatory animus which we assume with respect to Hughes. The record indicates that Liles ' decision was completely independent of Hughes' decision, and therefore untainted. Liles' untainted decision indicates that the City would have made the same decision regarding Pennington's promotion in the absence of any retaliatory bias harbored by Hughes.[5] Because the City would have

---

[5]The Ninth Circuit in Gilbrook v. City of Westminster, 177 F.3d 839, 854-55 (9th Cir. 1999), recognized that an employer may assert a mixed-motive defense when a decisionmaker with legitimate motives makes a redetermination of a challenged adverse employment action. However, that court found that under the facts presented the subordinate decisionmakers set in motion events that ultimately led to the adverse employment actions, and therefore it concluded that the employer would not have made the same decision in the absence of the subordinates' illegitimate motivations. See id. The Fifth Circuit addressed a similar issue in Professional Ass'n of Coll. Educators v. El Paso County Cmty. Coll. Dist., 730 F.2d 258, 266 (5th Cir. 1984), where it considered a mixed-motive defense based on a college board of trustees' decision to terminate an employee. The board had relied on the recommendation of the college's biased president, and the court refused to grant a judgment as a matter of law because the jury could have concluded that the board never would have considered dismissing the employee if the president had not brought charges in reprisal for protected activity. See id.

While not mentioning a mixed-motive defense, other courts have explained that a subsequent untainted and independent decision can break the chain of causation of a disputed employment action made by a subordinate and therefore absolve the employer of liability. See English v. Colorado Dep't of Corr., 248 F.3d 1002, 1011 (10th Cir. 2001); Eiland v. Trinity Hosp., 150 F.3d 747, 752-53 (7th Cir. 1998); Lacks v. Ferguson Reorganized Sch. Dist., 147 F.3d 718, 725 (8th Cir. 1998); Wilson v. Stroh Cos., 952 F.2d 942, 946 (6th Cir. 1992); DeHorney v. Bank of America Nat'l Trust & Savings Ass'n, 879 F.2d 459, 467 (9th Cir. 1989). But courts have also noted that causation is not broken when the ultimate decisionmaker never would have made the decision in the absence of the actions of the biased employee, or was influenced by the bias. See Russell v. McKinney Hosp. Venture, 235 F.3d 219, 228-29 (5th Cir. 2000); Kramer v. Logan County Sch. Dist., 157 F.3d 620, 624-25 (8th Cir. 1998); Shager v. Upjohn Co., 913 F.2d 398, 405 (7th Cir. 1990); Saye v. St. Vrain Valley Sch. Dist., 785 F.2d 862, 867-68 (10th Cir. 1985); Hickman v. Valley Local Sch. Dist. Bd. of Educ., 619 F.2d 606, 610 (6th Cir. 1980).

We are not faced with a concern here, similar to that in Gilbrook, that Hughes set in motion events that led to Pennington being denied the promotion at the Scruggs Center, because Pennington himself set in motion the events by applying for the promotion. Liles' independent evaluation of the candidates breaks the causal chain of events from Hughes' decision, and it establishes that Flanders would have received that promotion in the absence of any retaliatory

18

made the same decision, it is entitled to summary judgment on the retaliation claims.

The availability of the mixed-motive defense is particularly apt here because the City heeded the advice of its Equal Employment Officer and took corrective action. Liles, conducting an independent evaluation of the candidates in the face of discrimination charges, ensured that Pennington's civil rights were protected. Moreover, allowing Liles' actions to support the City's mixed-motive defense effectuates the policy expressly called for by Congress--to encourage alternative dispute resolution of employment discrimination charges. See Civil Rights Act of 1991, Pub. L. No. 102-166, § 118, 105 Stat. 1071, 1081 (codified at 42 U.S.C. § 1981) ("the use of alternative means of dispute resolution . . . is encouraged"); see also Dennis, 55 F.3d at 154 ("Encouraging non-judicial resolution of workplace grievances is thus an important part of the statutory scheme that Congress enacted.").

Having concluded that the district court properly granted summary judgment in favor of the City, both with respect to the initial failure to promote Pennington and the subsequent conditional promotion, the judgment of the district court is **AFFIRMED.**

---

bias harbored by Hughes.